IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | No. 2:11-cr-2037-DCN-19 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| NATHANIEL MAGWOOD, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on a motion to suppress brought by defendant Nathaniel Magwood. Magwood claims that drugs, drug paraphernalia, and cell phones seized from his vehicle were obtained in contravention of a warrant to search a nearby residence and that this evidence must be suppressed under the Fourth Amendment as fruit of an unconstitutional search and seizure. For the reasons set forth below, the court denies Magwood's motion.

## I.  BACKGROUND

On February 15, 2012, a federal grand jury indicted Magwood for conspiring to possess with intent to distribute and distribution of 5 kilograms or more of cocaine and 280 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. On August 15, 2012, Magwood filed the instant motion to suppress, and the government filed a response on August 21, 2012. The court held a suppression hearing on August 29, 2012. After considering the parties' written submissions and the testimony provided at the suppression hearing, the court makes the following findings of fact for purposes of this order.

1

On March 27, 2011, a warrant was issued for the search of 101A Pamlico Terrace in Charleston, South Carolina based on officers' reason to believe that illegal narcotics were being stored at the residence.[1] In the month of March, the City of Charleston Police Department's (CPD) Special Investigations Unit had received numerous complaints of narcotics activity at the residence. In addition, CPD Detective Christopher Ratliffe had previously used a confidential informant to purchase crack cocaine from the occupant of the residence, Patricia Frazier. The informant also notified CPD that Magwood was cooking crack cocaine there and Frazier was selling the crack for him.[2]

CPD officers conducted surveillance of the residence during the four days prior to executing the search warrant. On April 1, 2011, the search team observed the residence for around four hours. They did not see anyone coming to or leaving the residence and no cars were present. Detective Ratliffe then left the scene for around ten minutes to debrief his team before executing the search warrant. During this time, two vehicles arrived: a Volkswagen that was parked in the driveway and a Nissan Maxima that was parked in front of the house. The Maxima, which belongs to Magwood, was parked primarily on the street and positioned parallel to the road and residence.

When the officers exited their police van to execute the search warrant, they encountered Magwood and Frazier along with two other individuals identified as Herbie James and Marcellas Evans coming out the front door of the residence onto the porch. CPD officers detained and separated the adults and explained the search warrant to them before entering the residence. CPD Sergeant Jeff Robertson, a supervisor of the Narcotics Unit, initiated the search in the living room and found an envelope that he

---

[1] Magwood does not challenge the validity of this warrant.
[2] Detective Ratliffe testified at the suppression hearing that the informant had been utilized several times by CPD and previous information offered in other investigations had been verified.

believed to be a drug ledger[3] with the name "Nay Nay" written on the front. Another envelope was located in a kitchen drawer and also contained the name "Nay Nay." Sergeant Robertson testified that "Nay Nay" was known to the Narcotics Unit to be a nickname for defendant Nathaniel Magwood. The name "Warhead" was also scrawled on the envelope found in the kitchen. Sergeant Robertson knew "Warhead" to be Shahid Ladson, a narcotics dealer who has since died. Finally, one of the envelopes had the name "Pat" written on it, which Sergeant Robertson believed was the occupant of the residence, Patricia Frazier. Tally marks were inscribed next to the names. Based on his training, experience, and the intelligence he gathered in this case, the combination of names and tally marks led Sergeant Robertson to believe that the envelopes were drug ledgers. Along with the envelopes, officers also discovered a sandwich bag containing a green leafy substance, a microwave containing residue that field tested presumptive for cocaine, a scale marked with the name "Patricia" and containing white residue, and white residue on the kitchen floor. Detective Keith Sumner, who was responsible for collecting evidence, testified that nine millimeter bullets were also found in the residence.

Lieutenant Sterling Dutton, the commander of the CPD Special Investigations Unit, which encompasses the Narcotics Unit, was responsible for securing the exterior while other officers searched the residence. As the officers began to detain the four adults, Lieutenant Dutton noticed a young juvenile sitting in the back seat of the Nissan Maxima parked in front of Frazier's residence. Lieutenant Dutton immediately removed the juvenile from the car to protect him in case shots were fired or any other dangerous situation arose during the search. The juvenile did not appear to understand what was

---

[3] A drug ledger is commonly a document or notebook that records narcotics transactions and/or keeps track of money owed.

happening at the time and Lieutenant Dutton did not want him to be further traumatized by what was going on.[4] The juvenile told Lieutenant Dutton that earlier that day he was unable to enter his home and had called Marcellas Evans to come pick him up. Evans took the juvenile to Frazier's residence and he left his book bag inside after he was told to go outside and play. He later reentered the residence and grabbed his book bag but was again told to go outside, so he sat in the Nissan Maxima until the officers arrived to conduct the search.

After Lieutenant Dutton made arrangements for the juvenile to be picked up by a family member, the juvenile asked for his book bag, which he had left on the back seat of Magwood's car. Lieutenant Dutton testified that the bag appeared to belong to the juvenile because it resembled a child's book bag and was located near where the juvenile had been sitting. Lieutenant Dutton handed the book bag to Detective Michael Burke to search it because he wanted to make sure nothing unsafe or illegal would be in the juvenile's possession. Inside the book bag, Detective Burke discovered a white Food Lion bag, inside of which was a white latex glove containing approximately 23 grams of a white powdery substance that field tested presumptive for, and was later confirmed to be, cocaine. The juvenile denied any knowledge of the Food Lion bag being inside his book bag. After finding the cocaine, Detective Burke returned to Magwood's Nissan Maxima and seized two cell phones from the center console area and a large yellow Dollar General bag from the front passenger's side floorboard that contained a glass Pyrex cup, a box of baking soda, and a sandwich bag with a white substance inside. Detective Burke also searched Magwood and found $42 in his left front pants pocket.

---

[4] Two officers testified that the juvenile appeared to be of elementary school age but of below average intelligence.

Magwood testified at the suppression hearing. He stated that he had spent time in Frazier's residence prior to the date of the search, sometimes to gamble. He also admitted that he did not live at 101A Pamlico Terrace and the book bag found in his car did not belong to him. Magwood claimed that the Dollar General bag and contents discovered in the front passenger's side floorboard of his car belonged to Marcellas Evans.

In the instant motion, Magwood argues that he has standing to challenge the search of the book bag and search of his car and that the evidence seized was taken in violation of the Fourth Amendment because the officers lacked probable cause or a warrant to conduct the searches. The government responds that Magwood has no standing to challenge either the search of the book bag or the search of the residence, both of which provided probable cause to search Magwood's car under the automobile exception to the warrant requirement.[5]

## II. DISCUSSION

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Magwood argues that the search and seizure of evidence from his car violated his Fourth Amendment rights. The issues to be decided are whether Magwood has standing to challenge the search of the juvenile's book bag and the search of the residence, and whether the officers had probable cause to search the car and seize the items discovered therein.

---

[5] The government concedes that the warrant only covered a search of the residence, not Magwood's car. To the extent Magwood argues the car was parked outside the curtilage of the home and outside the scope of the warrant, this issue is moot.

### A. Standing

The threshold issue raised by the government is whether Magwood has standing to challenge the search of the juvenile's book bag. Without standing to challenge this search, the government argues, the cocaine found inside the book bag should not be suppressed, and the discovery of the cocaine provided probable cause for the officers to search Magwood's vehicle and seize the remaining evidence.

In conducting a standing analysis,

> the question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.

Rakas v. Illinois, 439 U.S. 128, 140 (1978). The capacity to claim protection under the Fourth Amendment depends upon whether the person "has a legitimate expectation of privacy in the invaded place." Id. at 143 (citing Katz v. United States, 389 U.S. 347 (1967)). This is because Fourth Amendment rights are personal and may not be vicariously asserted. United States v. Bullard, 645 F.3d 237, 241 (4th Cir. 2011). Thus, Magwood must establish a subjective expectation of privacy in the place searched or evidence seized and that society would recognize the expectation as objectively reasonable. See id. at 242-43.

#### 1. Search of the Book Bag

The testimony of the officers and Magwood himself provides sufficient evidence that Magwood had no expectation of privacy in the book bag that belonged to the juvenile. Where an individual claims an expectation of privacy in property of another, courts look to "whether the [individual] claims an ownership or possessory interest in the

property, and whether he has established a right or taken precautions to exclude others from the property." United States v. Rusher, 966 F.2d 868, 875 (4th Cir. 1992). Rather than claim a possessory interest, Magwood disclaims any interest in the book bag,[6] and he presented no evidence that he took precautions to exclude anyone from the bag. See Rawlings v. Kentucky, 448 U.S. 98, 105-06 (1980) (holding that petitioner could not challenge the search of another's purse because he lacked a reasonable expectation of privacy in the purse); United States v. Washington, 197 F.3d 1214, 1217 (8th Cir. 1999) ("Since [defendant] has consistently disavowed any ownership interest in the bag containing the cocaine, he is precluded from claiming that the bag was searched and its contents seized in violation of his constitutional rights."). Magwood conceded that if the juvenile wanted to leave and take his book bag, he would be entitled to, since "[t]hat's his." Moreover, while the search of the residence was taking place, the juvenile told Lieutenant Dutton that the bag belonged to him and specifically asked Lieutenant Dutton if he would retrieve his book bag and give it to him. Based on this evidence, Magwood had no reasonable expectation of privacy in the book bag and has no right to challenge its search.

Lieutenant Dutton properly removed the juvenile from the car in order to protect him from harm. "[E]ven absent particularized reasonable suspicion, innocent bystanders may be temporarily detained where necessary to secure the scene of a valid search or arrest and ensure the safety of officers and others." Bletz v. Gribble, 641 F.3d 743, 755 (6th Cir. 2011); see also United States v. Merkley, 988 F.2d 1062, 1064 (10th Cir. 1993) ("[A] law enforcement agent, faced with the possibility of danger, has a right to take

---

[6] The court also notes that the juvenile was not related to Magwood, but, according to Magwood, was Marcellas Evans's nephew.

reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists." (internal quotation marks omitted)). Once he was removed from the car, the juvenile specifically requested that he be given his book bag.

Although Lieutenant Dutton reached into the car to retrieve the bag, he did so for reasons independent of the search of the residence and subsequent search of the car, i.e., he was responding to the juvenile's request that he be given his book bag. Lieutenant Dutton asked Detective Burke to look in the book bag because he was concerned about the juvenile's safety and CPD's liability. While Magwood has a subjective expectation of privacy in his car, he did not even know that the book bag was in car until after it was removed. Given that the juvenile was free to enter and leave the car with his book bag without the knowledge or permission of Magwood, Magwood cannot now claim a subjective expectation of privacy, much less an objectively reasonable one, in the cocaine seized from the book bag. See United States v. Taylor, 857 F.2d 210, 214 (4th Cir. 1988) (holding that evidence obtained from search of a juvenile during a pat-down search of occupants of an automobile was properly admitted at trial because the adult occupants lacked standing to assert vicariously the rights of the juvenile). Lieutenant Dutton did not *search* Magwood's car when he removed the book bag but simply retrieved an item belonging to the juvenile after being asked to do so by its owner. Therefore, the court finds that Magwood cannot contest the search of the book bag because he lacks a reasonable expectation of privacy in that object.[7]

---

[7] Even if Magwood does have standing to contest the search of the book bag because it was taken from his car, as discussed below, the search of the residence and information known to officers leading up to the search furnished probable cause to search and seize items from Magwood's vehicle.

### 2. Search of the Residence

Magwood also lacks capacity to contest the search of the residence. Magwood admitted at the suppression hearing that the residence was not his own, thus he does not have a reasonable expectation of privacy in it. Rakas, 439 U.S. at 143 ("[C]apacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."). It is uncontested that the officers executed a valid warrant to search the residence. Therefore, Magwood has no standing to object to the introduction of the evidence seized therein.

### B. Probable Cause to Search the Car

Magwood contends that the officers lacked a warrant or probable cause to search his car and the evidence taken must be suppressed. The government responds that the discovery of the cocaine in the book bag and the items seized from the search of the residence each provided sufficient probable cause to search Magwood's car.

The automobile exception to the warrant requirement allows officers to search an automobile when they have probable cause to believe evidence of a crime is located inside the automobile. Under this exception, a police officer may search a vehicle without a warrant if "probable cause exists to believe it contains contraband" and the vehicle is "readily mobile." Maryland v. Dyson, 527 U.S. 465, 466 (1999) (per curiam) (internal quotation marks omitted). Such a search may cover all areas of the vehicle, including any of its "secret compartments." United States v. Bullock, 94 F.3d 896, 899 (4th Cir. 1996). The automobile exception has no separate exigency requirement. Dyson, 527 U.S. at 467.

First, Magwood's car was readily mobile. It arrived at Frazier's residence during the ten minutes that officers left their surveillance post to prepare for their execution of the search warrant. Because the vehicle was "clearly operational," it was readily mobile. United States v. Brookins, 345 F.3d 231, 238 (4th Cir. 2003).

Next, probable cause supports a search when there "is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). This standard is an objective one, which makes an officer's subjective motivations irrelevant. See Whren v. United States, 517 U.S. 806, 812 (1996). The court must examine the events leading up to the search and decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotation marks omitted). The touchstone of the probable cause inquiry "remains one of reasonableness." United States v. Sowards, No. 10-4133, 2012 WL 2386605, at *5 (4th Cir. June 26, 2012). The requisite showing is less than that required by a preponderance of the evidence standard, Gates, 462 U.S. at 235, and the probable cause standard does not even "require that the officer's belief be more likely true than false." United States v. Humphries, 372 F.3d 653, 660 (4th Cir. 2004).

The government first argues that the discovery of what appeared to be cocaine in the juvenile's book bag provided probable cause to search the vehicle. The court agrees. The discovery of 23 grams of a white powdery substance that field tests presumptive for cocaine in a young boy's book bag is more than enough for a reasonable officer to conclude that contraband or other evidence of a crime may be present in the car. Since

cocaine was found in the vehicle, there was a high probability that other evidence could be found in the vehicle.

The government alternatively argues, and the court agrees, that the events leading up to the search of the residence and the evidence seized from the residence made it objectively reasonable to search the vehicle. Thus, even if Magwood had the capacity to challenge the search of the book bag or if the discovery of the cocaine alone was not enough to provide probable cause to search the vehicle, the items seized from Magwood's car would inevitably have been discovered. Prior to the search, the officers were told by a confidential informant (whose statements had been previously verified) that Magwood was cooking crack cocaine at the residence and Frazier was selling it. In addition, the informant had completed a controlled purchase at Frazier's residence prior to the search. A "tip received from a known informant will more readily support a finding of probable cause" than that from an anonymous informant, United States v. Nolen, 536 F.3d 834, 840 (8th Cir. 2008), and information supplied by an informant with a dependable track record may be "sufficiently reliable to support a probable cause finding." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). Moreover, once they entered the residence pursuant to the warrant, officers discovered an abundance of drug-related evidence, including a scale containing white residue, a sandwich bag containing a green leafy substance, white residue on the kitchen floor, a microwave with residue that field tested presumptive for cocaine,[8] and nine millimeter bullets. Any objectively reasonable officer would conclude, based on the discovery of this evidence, that Magwood's car—which had just recently arrived at Frazier's home and was parked

---

[8] In the court's experience, crack cocaine is often, if not always, prepared by cooking regular cocaine in a microwave oven.

in front of the residence—could contain contraband or other evidence of a crime. Finally, Sergeant Robertson located two envelopes that he reasonably believed to be drug ledgers with the names "Nay Nay" and "Warhead" written next to tally marks. "Nay Nay" was a nickname known by officers to refer to defendant Nathaniel Magwood, who had been identified as the crack cocaine cook by a reliable confidential informant, and "Warhead" was the street name of a known drug dealer. This evidence specifically implicating Magwood in drug transactions provided a strong basis to conclude that Magwood's car would provide further evidence of illicit conduct.

For these reasons, the court holds that the cocaine discovered in the juvenile's bag provided probable cause to search Magwood's car. Even without the discovery of that evidence, the items obtained from the lawful search of the residence gave the officers probable cause to search the car, and the drugs, drug paraphernalia, and cell phones would inevitably have been discovered.

### III.  CONCLUSION

Based on the foregoing, the court **DENIES** defendant's motion to suppress.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 11, 2012**
**Charleston, South Carolina**